*Exhibit (24)*

## Lease Agreement w/Option to Purchase



State of: **PENNSYLVANIA**

County of: **DAUPHIN**

This agreement (herein "Agreement"), is made at **HARRISBURG, PENNSYLVANIA**, this **1ST** day of **NOVEMBER, 2016** between **CHALMERS ALIXANDER SIMPSON JR. & JESSICA LYNN DITTER ("TENANT")**, and **ALAN INVESTMENTS III, LLC** (called **"LANDLORD"**).

1. This Agreement is governed by all applicable **PENNSYLVANIA** and local laws. Landlord and Tenant acknowledge and accept the terms binding upon them. No term or condition of this Agreement is intended to be inconsistent therewith and, in the event that any provision of this Agreement is found to be in violation thereof, said provision shall be considered void to the extent of the violation only.

2. **LOCATION:** The Landlord hereby leases with an option to purchase the premises to the Tenant and the Tenant hereby agrees to a future option to purchase the premises from the Landlord that certain property located in the County of **DAUPHIN**, State of **PENNSYLVANIA**, which parcel of land with improvements will constitute the "premises." Said parcel of land is more particularly described as follows: **636 CURTIN STREET, HARRISBURG DAUPHIN PENNSYLVANIA 17110. Parcel ID 10-017-013.**

3. **TERM:** This Agreement shall commence on the **1ST** day of **NOVEMBER, 2016**, and end on the **31ST** day of **OCTOBER, 2017**. Tenant covenants that upon the termination of this Agreement, or any extension thereof that Tenant will quietly and peaceably deliver up possession of the premises in good order and condition, similar to or better than upon initial possession, reasonable wear and tear excepted, free of Tenant's personal property, garbage and other waste, and return all keys to the Landlord.

4. **LEAD-BASED PAINT DISCLOSURE FOR MOST RESIDENTIAL PROPERTIES BUILT BEFORE 1978:** See lead based paint disclosure addendum, attached hereto as Exhibit A. This only applies to most residential properties built before 1978. Tenant also acknowledges receipt of the EPA's and HUD's Brochure "Protect Your Family from Lead in Your Home", attached hereto as Exhibit B.

5. **LEASE WITH OPTION TO PURCHASE APPLICATION:** The Tenant acknowledges that the Landlord has relied upon a lease with option to purchase application, a copy of which is has been electronically retained, as an inducement for entering into this Agreement, and the Tenant warrants to the Landlord that the facts stated in the application are true to the best of Tenant's knowledge. If any facts stated in said application prove to be untrue, the Landlord shall have the right to terminate the residency immediately and to collect from the Tenant any damages, including reasonable attorney fees as allowable by state law, resulting therefrom.

6. **PAYMENTS:** Tenant agrees to pay Landlord **$588.00** per month, payable in advance, on or before the **1ST** day of every month during said term for a total payment of **$7,056.00**. Payments shall be made payable to: **ALAN INVESTMENTS III, LLC**, or as Tenant may be advised from time to time in writing, and delivered to: **16 Berryhill Road, Suite 200, Columbia, South Carolina 29210.** Tenant agrees to pay Landlord first month payment and the Option Agreement Fee, as defined in Section 42(a), at the signing of this Agreement.

   Tenant further agrees to pay a late fee no more than the maximum amount allowable by state law, not to exceed $75.00 when a payment is made after the 10th day after the original due date. Additional payments received from the Tenant will be applied towards the future monthly payments.

7. **OCCUPANTS:** Only persons designated in this Agreement or as further modified or agreed to in writing by Landlord shall reside in the premises. Tenants shall be responsible for complying with local applicable law dealing with occupancy limits

8. **RETURNED CHECKS:** Tenant agrees to pay a fee no more than the maximum amount allowable by state law for each dishonored check, plus late charges if the check is not made good before the tenth day after the original due date. All future payments and charges, if more than one check is returned, shall be paid in the form of cash, cashier's checks, certified check or money order. If any check for

---

**|CS| TENANT 1 INITIALS |JD| TENANT 2 INITIALS |___| LANDLORD INITIALS**

# Exhibit C - Plan of Action (POA)

**VISION** PROPERTY MANAGEMENT

**Property Address:** 636 Curtin Street Harrisburg, PA 17110

| GENERAL | Landlord Disclosure/Inspection | Tenant Diligence / Inspection | Responsibility to Cure | Weeks to Complete |
|---|---|---|---|---|
| Code Violations: | ○ Yes ○ No ● Unknown | ○ Yes ● No ○ Unknown | ○ Landlord ● Tenant | 0 |
| Asbestos: | ○ Yes ○ No ● Unknown | ○ Yes ● No ○ Unknown | ○ Landlord ● Tenant | 0 |
| Lead Based Paint: | ○ Yes ○ No ● Unknown | | | |
| Condemned: | ○ Yes ○ No ● Unknown | | | |
| Demo List: | ○ Yes ○ No ● Unknown | | | |

**Itemized Description of Responsibilities:**

CM was told the house needs to be "registered."

| UTILITIES | Landlord Disclosure/Inspection | Tenant Diligence / Inspection | Responsibility to Cure | Weeks to Complete |
|---|---|---|---|---|
| Electricity on to Meter: | ○ Yes ○ No ● Unknown | ● Yes ○ No ○ Unknown | ○ Landlord ● Tenant | 0 |
| Water to House/Meter: | ○ Yes ○ No ● Unknown | ● Yes ○ No ○ Unknown | ○ Landlord ● Tenant | 0 |
| Gas to House/Meter: | ○ Yes ○ No ○ Unk ● N/A | ○ Yes ● No ○ Unk ○ N/A | ○ Landlord ● Tenant | 0 |

**Itemized Description of Responsibilities:**

| PROPERTY EXPENSES | Landlord Disclosure | Tenant Diligence | Responsibility to Cure | Weeks to Complete |
|---|---|---|---|---|
| Electric: | ○ Yes ○ No ● Unknown | ○ Yes ● No ○ Unknown | ○ Landlord ● Tenant | 0 |
| Gas: | ○ Yes ○ No ● Unknown | ○ Yes ● No ○ Unknown | ○ Landlord ● Tenant | 0 |
| Water: | ○ Yes ○ No ● Unknown | ○ Yes ○ No ● Unknown | ○ Landlord ● Tenant | 0 |
| Sewer/Septic: | ○ Yes ○ No ● Unknown | ○ Yes ● No ○ Unknown | ○ Landlord ● Tenant | 0 |
| HOA: | ● Yes ○ No ○ Unknown | ○ Yes ● No ○ Unknown | ○ Landlord ● Tenant | 0 |
| Taxes: | ○ Yes ○ No ● Unknown | ○ Yes ● No ○ Unknown | ○ Landlord ● Tenant | 0 |
| Liens: | ○ Yes ○ No ● Unknown | ○ Yes ● No ○ Unknown | ○ Landlord ● Tenant | 0 |
| Rent/Occupancy Permits: | ○ Yes ○ No ● Unknown | ○ Yes ● No ○ Unknown | ○ Landlord ● Tenant | 0 |
| Inspections: | ● Yes ○ No ○ Unknown | ● Yes ○ No ○ Unknown | ○ Landlord ● Tenant | 0 |
| Fines & Penalties: | ● Yes ○ No ○ Unknown | ● Yes ○ No ○ Unknown | ○ Landlord ● Tenant | 0 |

**Itemized Description of Responsibilities:**

Unable to get any information on water
Code enforcement will do an inspection
$401.93 Garbage Bill

Version 1.8

VISION
PROPERTY MANAGEMENT

# Exhibit C - Plan of Action (POA)

## MAJOR ITEMS:

| | Landlord Disclosure | Tenant Diligence | Responsibility to Cure | Weeks to Complete |
|---|---|---|---|---|
| Roof Replacement: | Yes  No  ⊙ Unknown | Yes  ⊙ No  Unknown | Landlord  ⊙ Tenant | 0 |
| Electrical Upgrade: | Yes  No  ⊙ Unknown | Yes  ⊙ No  Unknown | Landlord  ⊙ Tenant | 0 |
| Plumbing Upgrade: | ⊙ Yes  No  Unknown | Yes  ⊙ No  Unknown | Landlord  ⊙ Tenant | 0 |
| HVAC Upgrade: | ⊙ Yes  No  Unknown | Yes  ⊙ No  Unknown | Landlord  ⊙ Tenant | 1 day |
| Structural Repair: | Yes  No  ⊙ Unknown | Yes  ⊙ No  Unknown | Landlord  ⊙ Tenant | 0 |
| Septic Repair/Replace: | ⊙ Yes  No  Unknown | Yes  ⊙ No  Unknown | Landlord  ⊙ Tenant | 0 |
| Well Repair/Replace: | Yes  No  ⊙ Unknown | Yes  ⊙ No  Unknown | Landlord  ⊙ Tenant | 0 |
| Mold Remediation: | Yes  No  ⊙ Unknown | Yes  ⊙ No  Unknown | Landlord  ⊙ Tenant | 0 |
| Other (Define Below): | Yes  ⊙ No  Unknown | Yes  ⊙ No  Unknown | Landlord  ⊙ Tenant | 0 |

**Itemized Description of Responsibilities:**

Needs A/C; CM has a unit he would put in (window unit)

Nephew builds houses and Uncle certified HVAC and electrical.  They inspected the house with him.

## MINOR ITEMS:

| | Landlord Disclosure | Tenant Diligence | Responsibility to Cure | Weeks to Complete |
|---|---|---|---|---|
| Roof Repair: | Yes  No  ⊙ Unknown | ⊙ Yes  No  Unknown | Landlord  ⊙ Tenant | 0 |
| Electrical Repair: | ⊙ Yes  No  Unknown | Yes  ⊙ No  Unknown | Landlord  ⊙ Tenant | 0 |
| Plumbing Repair: | ⊙ Yes  No  Unknown | ⊙ Yes  No  Unknown | Landlord  ⊙ Tenant | 1 day |
| HVAC Repair: | ⊙ Yes  No  Unknown | Yes  No  ⊙ Unknown | Landlord  ⊙ Tenant | 0 |
| Mold Remediation: | ⊙ Yes  No  Unknown | Yes  ⊙ No  Unknown | Landlord  ⊙ Tenant | 0 |
| Debris Removal: | ⊙ Yes  No  Unknown | ⊙ Yes  No  Unknown | Landlord  ⊙ Tenant | 0 |
| General Exterior Repairs: | ⊙ Yes  No  Unknown | ⊙ Yes  No  Unknown | Landlord  ⊙ Tenant | 1 day |
| General Interior Walls: | ⊙ Yes  No  Unknown | ⊙ Yes  No  Unknown | Landlord  ⊙ Tenant | 0 |
| General Interior Floors: | ⊙ Yes  No  Unknown | ⊙ Yes  No  Unknown | Landlord  ⊙ Tenant | 0 |
| General Interior Ceilings: | ⊙ Yes  No  Unknown | ⊙ Yes  No  Unknown | Landlord  ⊙ Tenant | 1 day |
| Smoke Detectors Missing: | ⊙ Yes  No  Unknown | ⊙ Yes  No  Unknown | Landlord  ⊙ Tenant | 0 |
| Pests/WDO Remediation: | ⊙ Yes  No  Unknown | Yes  ⊙ No  Unknown | Landlord  ⊙ Tenant | 0 |
| Other (Define Below): | Yes  No  ⊙ Unknown | Yes  ⊙ No  Unknown | Landlord  ⊙ Tenant | 0 |

**Itemized Description of Responsibilities:**

Downspout is missing. Vines growing up on the side of the house that will have to be pulled off.  Front window is boarded.  Nephew will put in new windows

Pipe needed under the sink in the kitchen; CM already purchased this. Uncle will be doing this for him.  Water ran from this leak down to the basement.  CM stated he did see stains from the water but is positive it is not mold.

Ceiling/drywall came down.  Nephew will re-do this.

Needs deep clean and cosmetic work.  Livable within 1-2 weeks.  Nephew and uncle will be making repairs with him.  Has most of the material already.

## TENANT CERTIFICATION

☑ *I hereby certify that I have physically performed a visual inspection of the above noted property, performed the required due diligence as requested, and agree that all "responsibilities to cure" assigned to me will be completed within ____?____ week (s) from execution of the Lease to Own Agreement by either myself or a licensed and insured contractor. I also agree to assume responsibility for all items and issues marked as "Unknown" by Landlord, will obtain all required building permits, and will pay for all associated permit fees.*

### FOR INTERNAL USE ONLY
☑ Tenant agrees to take physical possession of the referenced property upon receipt of first month payment and the Option Agreement Fee.
☐ Major Repairs are required, and the Tenant has agreed to not take physical occupancy until authorized by the Landlord.
☑ Monthly rent payments from Tenant will resume on 12 / 1 / 2016

TENANT: *Chelmett A Simpson III*

Signature: *Jessica Lynn Ditter*

Print Tenant Name: *Chelmett A Simpson III / Jessica Lynn Ditter*

Date: 10/27/16 | 10/27/2016

LANDLORD:

Signature:

Print Landlord Name:

Date:       /      /

**HP Officejet Pro 8620 Series**

**Fax Log for**
Lucky Dollar Market
717 238 0118
Oct 28 2016 6:54PM

## Last Transaction

| Date | Time | Type | Station ID | Duration | Pages | Result |
|------|------|------|------------|----------|-------|--------|
|      |      |      |            | Digital Fax |     |        |
| Oct 28 | 6:52PM | Fax Sent | 8032503893 | 0:00 N/A | 1 | Error 346* |

* A communication error occurred during the fax transmission.
If you're sending, try again and/or call to make sure the recipient's
fax machine is ready to receive faxes.  If you're receiving, contact
the initiator and ask them to send the document again.

HP Officejet Pro 8620 Series

**Fax Log for**
Lucky Dollar Market
717 238 0118
Oct 28 2016 6:56PM

**Last Transaction**

| Date | Time | Type | Station ID | Duration | Pages | Result |
|------|------|------|------------|----------|-------|--------|
| | | | | Digital Fax | | |
| Oct 28 | 6:55PM | Fax Sent | 18032503893 | 0:00 N/A | 1 | Error 346* |

\* A communication error occurred during the fax transmission.
If you're sending, try again and/or call to make sure the recipient's
fax machine is ready to receive faxes.  If you're receiving, contact
the initiator and ask them to send the document again.

HP Officejet Pro 8620 Series

**Fax Log for**
Lucky Dollar Market
717 238 0118
Oct 28 2016 6:58PM

**Last Transaction**

| Date | Time | Type | Station ID | Duration | Pages | Result |
|------|------|------|-----------|----------|-------|--------|
| | | | | Digital Fax | | |
| Oct 28 | 6:58PM | Fax Sent | 8032503893 | 0:00 N/A | 0 | Cancel |

**HP Officejet Pro 8620 Series**

**Fax Log for**
Lucky Dollar Market
717 238 0118
Oct 28 2016 7:01PM

Last Transaction

| Date | Time | Type | Station ID | Duration | Pages | Result |
|------|------|------|-----------|----------|-------|--------|
| | | | | Digital Fax | | |
| Oct 28 | 6:59PM | Fax Sent | 8032503893 | 0:00 N/A | 2 | Error 346* |

\* A communication error occurred during the fax transmission.
If you're sending, try again and/or call to make sure the recipient's
fax machine is ready to receive faxes. If you're receiving, contact
the initiator and ask them to send the document again.

* * * Communication Result Report ( Oct. 31. 2016 10:25AM ) * * *

1)
2)

Date/Time: Oct. 31. 2016 10:21AM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|----------|------|-------------|-------|--------|---------------|
| 0103 | Memory TX | 918032503893 | P.  9 | OK | |

-----------------------------------------------------------------------

Reason for error
  E. 1) Hang up or line fail          E. 2) Busy
  E. 3) No answer                     E. 4) No facsimile connection
  E. 5) Exceeded max. E-mail size     E. 6) Destination does not support IP-Fax

# Fax Transmission

**Date:** 10/27/2016 2:22:58 PM
**Subject:**
**Total pages:** 23



**VISION**
PROPERTY MANAGEMENT

| To: | Attn: Chalmers Simpson | From: | Walter Roesch |
|---|---|---|---|
| Company: | | Phone: | 8032503832 |
| Phone: | | Fax: | 8032503893 |
| Fax: | 7172335000 | | |

## Message:

Please see attached for the Contract, Disclosure of Information on Lead-Based Paint, and Plan of Action.

1. On the Contract: Please initial at the bottom of each page 1-8 and sign and date on Page 9. Additionally; intial at the top of Page 2 and towards the bottom of Page 8.

2. On the Disclosure of Information on Lead Based Paint: Both you and Jessica need to initial by C and D. You can check either i. or ii. under E. Both you and Jessica need to sign by Purchaser at the bottom of the page.

3. On the Plan of Action- Please check the box for TENANT CERTIFICATION towards the bottom of the last page. You and Jessica both also need to sign by Tenant.

Please double-check and make sure you have signed everything correctly before sending it back.

# Lease Agreement w/Option to Purchase



State of:                    **PENNSYLVANIA**

County of:                   **DAUPHIN**

*Contract began 11/1/2016*

This agreement (herein "Agreement"), is made at **HARRISBURG, PENNSYLVANIA**, this **1ST** day of **NOVEMBER, 2016** between **CHALMERS ALEXANDER SIMPSON JR. & JESSICA LYNN DITTER** ("TENANT"), and **ALAN INVESTMENTS III, LLC** (called "LANDLORD").

1. This Agreement is governed by all applicable **PENNSYLVANIA** and local laws. Landlord and Tenant acknowledge and accept the terms binding upon them. No term or condition of this Agreement is intended to be inconsistent therewith and, in the event that any provision of this Agreement is found to be in violation thereof, said provision shall be considered void to the extent of the violation only.

2. **LOCATION:** The Landlord hereby leases with an option to purchase the premises to the Tenant and the Tenant hereby agrees to a future option to purchase the premises from the Landlord that certain property located in the County of **DAUPHIN**, State of **PENNSYLVANIA**, which parcel of land with improvements will constitute the "premises." Said parcel of land is more particularly described as follows: **636 CURTIN STREET, HARRISBURG DAUPHIN PENNSYLVANIA 17110**. Parcel ID **10-017-013**.

3. **TERM:** This Agreement shall commence on the **1ST** day of **NOVEMBER, 2016**, and end on the **31ST** day of **OCTOBER, 2017**. Tenant covenants that upon the termination of this Agreement, or any extension thereof that Tenant will quietly and peaceably deliver up possession of the premises in good order and condition, similar to or better than upon initial possession, reasonable wear and tear excepted, free of Tenant's personal property, garbage and other waste, and return all keys to the Landlord.

4. **LEAD-BASED PAINT DISCLOSURE FOR MOST RESIDENTIAL PROPERTIES BUILT BEFORE 1978:** See lead based paint disclosure addendum, attached hereto as Exhibit A. This only applies to most residential properties built before 1978. Tenant also acknowledges receipt of the EPA's and HUD's Brochure "Protect Your Family from Lead in Your Home", attached hereto as Exhibit B.

5. **LEASE WITH OPTION TO PURCHASE APPLICATION:** The Tenant acknowledges that the Landlord has relied upon a lease with option to purchase application, a copy of which is has been electronically retained, as an inducement for entering into this Agreement, and the Tenant warrants to the Landlord that the facts stated in the application are true to the best of Tenant's knowledge. If any facts stated in said application prove to be untrue, the Landlord shall have the right to terminate the residency immediately and to collect from the Tenant any damages, including reasonable attorney fees as allowable by state law, resulting therefrom.

6. **PAYMENTS:** Tenant agrees to pay Landlord **$588.00** per month, payable in advance, on or before the **1ST** day of every month during said term for a total payment of **$7,056.00**. Payments shall be made payable to: **ALAN INVESTMENTS III, LLC**, or as Tenant may be advised from time to time in writing, and delivered to: **16 Berryhill Road, Suite 200, Columbia, South Carolina 29210**. **Tenant agrees to pay Landlord first month payment and the Option Agreement Fee, as defined in Section 42(a), at the signing of this Agreement.**

   Tenant further agrees to pay a late fee no more than the maximum amount allowable by state law, not to exceed $75.00 when a payment is made after the 10th day after the original due date. Additional payments received from the Tenant will be applied towards the future monthly payments.

7. **OCCUPANTS:** Only persons designated in this Agreement or as further modified or agreed to in writing by Landlord shall reside in the premises. Tenants shall be responsible for complying with local applicable law dealing with occupancy limits

8. **RETURNED CHECKS:** Tenant agrees to pay a fee no more than the maximum amount allowable by state law for each dishonored check, plus late charges if the check is not made good before the tenth day after the original due date. All future payments and charges, if more than one check is returned, shall be paid in the form of cash, cashier's checks, certified check or money order. If any check for

|ᴄᴀ| **TENANT 1 INITIALS** |ⱼⱼ| **TENANT 2 INITIALS** |___| **LANDLORD INITIALS**

Page 1 of 9

**Lease Agreement w/Option to Purchase**



the first month's payment is returned for insufficient funds, Landlord may declare this Agreement void and immediately terminated.

9.  **RENEWAL TERMS:** This Agreement will automatically renew annually for six consecutive periods as long as there is no default by Tenant hereunder. Tenant retains the option to terminate this Agreement at any point after the completion of the first year, with thirty (30) days prior written notice, as defined in Paragraph 18. Upon expiration of the final term of this Agreement, when an option to purchase has not been executed by the Tenant, the Landlord agrees to renegotiate or extend the terms of this Agreement with Tenants who are current and up to date on all payments. In these instances, payments received from the Tenant will not accrue monthly payment credits defined in Section 42 (e).

    *I have read and hereby agree to this section:* Tenant Initials: __CS__   Tenant Initials: __JD__   Landlord Initials: _____

10. **SUBLEASE:** Tenant shall not assign or sublet said premises, or any part thereof without the written consent of Landlord. Tenant must have written permission from Landlord for guests to occupy the premises for more than 30 days.

11. **UTILITIES AND SERVICES:** Tenant agrees to pay for all utilities and services, which include but are not limited to electricity, gas, water, sewer, trash removal, snow removal, pest control, amenity charges, and lawn and landscaping maintenance. In the event of Tenant default in connection with the payment of utilities and services, Landlord may pay for such utilities and services and charge Tenant as additional monthly payments therefore, together with any additional penalties, charges and interest charged by the providers. Tenant shall be liable for any inspections and associated fees required by local authorities and/or utility companies due to Tenant's failure to obtain service at time of occupancy or to maintain said services during the term of this Agreement. Tenant shall pay all costs of hook-ups and connection fees and security deposits in connection with providing utilities to the premises during the term of the Agreement. Any fines levied as a result of criminal activity will be the responsibility of the Tenant. Landlord hereby grants Tenant the express authority to secure utilities and services in Tenant's name during the term of this Agreement, to the extent allowed by the utility and service provider.

12. **TENANT OBLIGATIONS, MAINTENANCE AND OCCUPANCY:** Tenant acknowledges that in return for monetary consideration towards a future option to purchase said premises as stipulated in Section 42 - Option to Purchase Clause, Tenant acknowledges that Tenant, and/or a licensed third party professional, has physically inspected the premises and agrees to take possession of said premises in "As-Is" condition. When applicable, a mutually agreed upon Plan of Action ("POA") to bring the premises to level of habitability and compliance with code ordinances shall be executed and incorporated into this Agreement by reference as Exhibit C.

    Tenant agrees to keep the premises safe and clean. In the case of a single-family house or duplex, Tenant shall keep the yard mowed, watered and free of pests, keep the roof and gutters free of debris, the shrubs neatly trimmed, and landscaping maintained. Tenant agrees not to store hazardous materials on the premises. Tenant agrees to comply with this Agreement and the rules and regulations that the Landlord may adopt concerning the Tenant's use and occupancy of the premises. Tenant is responsible for the installation and maintenance of all appliances and all smoke and carbon monoxide detectors, and understands that the Landlord is not responsible for such maintenance or installation or for replacing smoke and carbon monoxide detectors or changing batteries in said detectors.

    Tenant agrees to be responsible at Tenant's expense for all routine maintenance of the premises, including, but is not limited to, keeping all roofing, heating, air conditioning, ventilation, plumbing, electrical and other facilities and appliances, and all sanitary systems in reasonably good and safe working condition. It is specifically understood that Tenant will, at Tenant's expense, keep sinks, lavatories, and commodes open, reporting any initial problem within five (5) days of occupancy, repair any and all damages caused by the tenancy and replace any burned out light bulbs. Tenant agrees to report to Landlord any malfunction of or damage to electrical, plumbing, HVAC systems, smoke detectors, and any occurrence that may cause damage to the property. Tenant also agrees to pay for the cost of all repairs made necessary by negligence or careless use of the premises and to pay for repairs/loss resulting from theft, malicious mischief or vandalism by Tenant and Tenant's guests and invitees. Tenant agrees to provide copies to Landlord of any inspection reports or repair estimates that Tenant may obtain. Tenant agrees to be responsible for and to make, at Tenant's expense, all routine

RECEIVED 208/874 2015 03:35PM 757235800     FAMILY FINANCIL CENT

# Lease Agreement w/Option to Purchase



maintenance, regardless of whether caused by Tenant's negligence or careless use of the premises. Tenant is authorized to perform alterations, repairs and improvements in or to said premises or the fixtures or appliances contained therein without written consent of Landlord, and such costs shall be the sole responsibility of the Tenant. Demolitions of any type require written consent of Landlord. All remodeling and renovations undertaken by Tenant shall be properly permitted by the applicable authorities. Tenant shall indemnify and hold Landlord harmless from any mechanic's liens placed upon the premises due to Tenant's failure to pay any subcontractors or suppliers for work or services performed on the premises. In the event a mechanic's lien is placed upon the premises, said mechanic's lien filing shall be considered a default under this Agreement, entitling Landlord to exercise its remedies here including eviction. In the event said mechanic's lien is not released from the premises within thirty (30) days of the filing date, Landlord may put the Tenant in default of this Agreement and exercise any and all remedies available to Landlord as set forth below. Alternatively, Landlord may pay the amount claimed on said mechanic's lien and add said amount to Tenant's monthly payment. Any failure of Tenant to promptly pay amounts paid by Landlord to remove mechanic's liens shall be a default in Tenant's obligation to pay under this Agreement. Tenant shall indemnify and hold Landlord harmless from any and all damages, claims, liabilities, or losses whatsoever occurring out of Tenant's negligent or unintentionally deficient renovation work completed hereunder. **NO REPAIR COSTS SHALL BE DEDUCTED FROM PAYMENTS BY TENANT.** All improvements made by Tenant to the said premises shall become the property of the Landlord at the end of the lease term. The provisions of this Paragraph shall survive this Agreement.

Tenant, or any member of Tenant's family, guest or other person under the Tenant's control, shall conduct themselves in a manner that will not disturb any neighbor's peaceful enjoyment of their premises. Tenant, or any member of Tenant's family, guest or other person under the Tenant's control, shall not engage in or facilitate criminal or drug related activities. Any such violation constitutes a substantial violation of this Agreement, and is grounds for termination of tenancy and eviction from the premises. Tenant also agrees to pay for the cost of all repairs made necessary by the negligence or careless use of the premises and to pay for repairs/loss resulting from theft, malicious mischief or vandalism by Tenant and their guests. Tenant agrees to provide copies to Landlord of any inspection reports or repair estimates that Tenant may obtain.

Tenant is directly responsible for any damage caused by Tenant's appliances and/or furniture. Tenant is responsible for changing HVAC filters, reporting any water leaks, lighting pilot lights, checking for tripped breakers, changing smoke detector batteries and minor housekeeping repairs. Tenants will be held liable for damage to HVAC systems caused by dirty or missing filters and damages resulting from unreported problems. Tenant acknowledges that Tenant has inspected the premises and agrees that the premises and are in safe, fit and habitable condition upon occupancy.

13. **MAINTENANCE OF PREMISES, PEST CONTROL:** In accordance with Section 11, Tenant shall be responsible for keeping premises safe and clean and free of any infestation of any kind, including termites. Tenant is also responsible for repairing any damage caused from such infestation.

14. **ESSENTIAL SERVICES AND APPLIANCES:** The Landlord shall provide available utilities up to the respective meter in or on the premises; meaning electricity, gas and running water. As it relates to sanitary plumbing or sewer services, the Landlord shall provide a functioning connection to the premises.

In the event that these services are disconnected and unable to be tested, or require repairs from the meter forward, the Landlord and Tenant will enter into a Plan of Action ("POA") and establish responsibilities and timelines for completion. During this period of time, the Tenant may take possession but shall not occupy the premises. Once the repairs have been completed, services are operational, and the local municipality and/or the Landlord has completed an inspection of the repair work, the Tenant may take occupancy. Appliances are the responsibility of the Tenant to maintain and replace when necessary.

15. **INSURANCE:** Tenant shall be responsible for insuring his/her own personal contents and possessions against fire, theft and other catastrophes and/or occurrences. Landlord and Tenant hereby release each other from liability for loss or damage occurring on or to the leased premises, caused by fire or other hazards ordinarily covered by fire and extended coverage insurance policies and each waives all rights of recovery against the other for such loss or damage. Willful misconduct lawfully attributable to either party, whether in

[CV] | TENANT 1 INITIALS [JD] | TENANT 2 INITIALS |___| LANDLORD INITIALS

**Lease Agreement w/Option to Purchase**



whole or in part a contributing cause of the casualty giving rise to the loss or damage, shall not be excused under the foregoing release and waiver.

Landlord has included casualty and general liability insurance on the dwelling. Tenant will notify the Landlord immediately in the event of any damage due to fire or other peril. In the event of a total loss, the Landlord shall have the sole option to repair or raze the improvements, terminate this Agreement, or provide a property of similar utility to the Tenant.

16. **RIGHT TO ACCESS:** The Tenant shall not unreasonably withhold consent to the Landlord to enter into the dwelling unit in order to inspect the premises or make agreed repairs or supply agreed services or exhibit the premises to prospective or actual purchasers, tenants, workmen, or contractors. The Landlord or Landlord's agent may enter the dwelling unit without consent of the Tenant:

   a. At any time in case of emergency, including but not limited to prospective changes in weather conditions which pose a likelihood of danger to the property may be considered an emergency; and

   b. Between the hours of 8:00 a.m. and 8:00 p.m. for the purpose of providing agreed repairs or services, provided that prior to entering the Landlord announces intent to enter to perform services.

The Landlord shall not abuse the right of access or use it to harass the Tenant. Except for paragraphs 16(a) above, the Landlord shall give the Tenant at least a 24-hour notice of intent to enter and may enter only at reasonable times.

The Landlord has no other right of access except pursuant to court order, as allowable by state law, when accompanied by a law enforcement officer at reasonable times for the purpose of service of process in ejectment proceedings, or unless the Tenant has abandoned or surrendered the premises.

17. **MILITARY CLAUSE:** If the Tenant is a member of the Armed Forces of the United States, stationed in the local area, and shall receive permanent change of station orders out of the local area, Tenant may, upon presentation of a copy of said orders of transfer to the Landlord, along with thirty (30) days written notice of intent to vacate and make all payments due as of the expiration date of such written notice, and any miscellaneous charges in arrears, terminate this Agreement. Normal enlistment termination or other type discharge from Armed Forces, unless due to conditions beyond the service member's control, or acceptance of government quarters is not a permanent change of station and is not justification for termination of this Agreement. Withholding knowledge of pending transfer or discharge at time of entry into this Agreement voids any consideration or protection offered by this section.

18. **DEFINITION OF "THIRTY (30) DAY NOTICE":** Any written notice given by either party to the other party in order to meet a thirty (30) day notice requirement will be deemed given, and the thirty (30) days is deemed to commence upon receipt of said notice. Any termination permitted by other sections contingent upon a thirty (30) day notice will then be effective as of the effective date of said notice.

19. **DESTRUCTION OR DAMAGE TO PREMISES:** If the premises are damaged or destroyed by fire or casualty to the extent that normal use and occupancy of the premises is substantially impaired, the Tenant may:

   a. Immediately vacate the premises and notify the Landlord in writing within seven days thereafter of Tenant's intention to terminate the Agreement, in which case the Agreement terminates as of the date of vacating; or

   b. if continued occupancy is lawful, vacate any part of the premises rendered unusable by the fire or casualty, in which case the Tenant's liability for payment is reduced in proportion to the diminution of use of the premises.

20. **CONDEMNATION:** Tenant hereby waives any injury, loss or damage, or claim therefore against Landlord resulting from any exercise of a power of eminent domain of all or any part of the premises or surrounding grounds of which they are a part. All awards of the condemning authority for the taking of land, parking areas, or buildings shall belong exclusively to the Landlord. In the event

Lease Agreement w/Option to Purchase



whole or in part a contributing cause of the casualty giving rise to the loss or damage, shall not be excused under the foregoing release and waiver.

Landlord has included casualty and general liability insurance on the dwelling. Tenant will notify the Landlord immediately in the event of any damage due to fire or other peril. In the event of a total loss, the Landlord shall have the sole option to repair or raze the improvements, terminate this Agreement, or provide a property of similar utility to the Tenant.

16. **RIGHT TO ACCESS:** The Tenant shall not unreasonably withhold consent to the Landlord to enter into the dwelling unit in order to inspect the premises or make agreed repairs or supply agreed services or exhibit the premises to prospective or actual purchasers, tenants, workmen, or contractors. The Landlord or Landlord's agent may enter the dwelling unit without consent of the Tenant:

    a. At any time in case of emergency, including but not limited to prospective changes in weather conditions which pose a likelihood of danger to the property may be considered an emergency, and

    b. Between the hours of 8:00 a.m. and 8:00 p.m. for the purpose of providing agreed repairs or services, provided that prior to entering the Landlord announces intent to enter to perform services.

The Landlord shall not abuse the right of access or use it to harass the Tenant. Except for paragraphs 16(a) above, the Landlord shall give the Tenant at least a 24-hour notice of intent to enter and may enter only at reasonable times.

The Landlord has no other right of access except pursuant to court order, as allowable by state law, when accompanied by a law enforcement officer at reasonable times for the purpose of service of process in ejectment proceedings, or unless the Tenant has abandoned or surrendered the premises.

17. **MILITARY CLAUSE:** If the Tenant is a member of the Armed Forces of the United States, stationed in the local area, and shall receive permanent change of station orders out of the local area, Tenant may, upon presentation of a copy of said orders of transfer to the Landlord, along with thirty (30) days written notice of intent to vacate and make all payments due as of the expiration date of such written notice, and any miscellaneous charges in arrears, terminate this Agreement. Normal enlistment termination or other type discharge from Armed Forces, unless due to conditions beyond the service member's control, or acceptance of government quarters is not a permanent change of station and is not justification for termination of this Agreement. Withholding knowledge of pending transfer or discharge at time of entry into this Agreement voids any consideration or protection offered by this section.

18. **DEFINITION OF "THIRTY (30) DAY NOTICE":** Any written notice given by either party to the other party in order to meet a thirty (30) day notice requirement will be deemed given, and the thirty (30) days is deemed to commence upon receipt of said notice. Any termination permitted by other sections contingent upon a thirty (30) day notice will then be effective as of the effective date of said notice.

19. **DESTRUCTION OR DAMAGE TO PREMISES:** If the premises are damaged or destroyed by fire or casualty to the extent that normal use and occupancy of the premises is substantially impaired, the Tenant may:

    a. Immediately vacate the premises and notify the Landlord in writing within seven days thereafter of Tenant's intention to terminate the Agreement, in which case the Agreement terminates as of the date of vacating; or

    b. if continued occupancy is lawful, vacate any part of the premises rendered unusable by the fire or casualty, in which case the Tenant's liability for payment is reduced in proportion to the diminution of use of the premises.

20. **CONDEMNATION:** Tenant hereby waives any injury, loss or damage, or claim therefore against Landlord resulting from any exercise of a power of eminent domain of all or any part of the premises or surrounding grounds of which they are a part. All awards of the condemning authority for the taking of land, parking areas, or buildings shall belong exclusively to the Landlord. In the event

**Lease Agreement w/Option to Purchase**



substantially all of the premises shall be taken, this Agreement shall terminate as of the date the right to possession vested in the condemning authority and payment shall be apportioned as of that date. In the event any part of the property and/or building or buildings of which the premises are a part (whether or not the premises shall be affected) shall be taken as a result of the exercise of a power of eminent domain, and the remainder shall not, in the opinion of the Landlord, constitute an economically feasible operating unit, Landlord may, by written notice to Tenant given within sixty (60) days after the date of taking, terminate this Agreement as of a date set out in the notice not earlier than thirty (30) days after the date of the notice; payment shall be apportioned as of termination date.

21. **ABSENCE, NON-USE AND ABANDONMENT:** The unexplained absence of a Tenant from the premises for a period of 15 days after payment default shall be construed as abandonment of the premises. If the Tenant abandons the premises for a term beginning before the expiration of the Agreement, it terminates as of the date of the new tenancy, subject to the other Landlord's remedies. If the Landlord fails to use reasonable efforts to re-lease the premises at a fair market price or if the Landlord accepts the abandonment as a surrender, this Agreement is considered to be terminated by the Landlord as of the date the Landlord has notice of the abandonment. When the premises has been abandoned or this Agreement has come to an end and the Tenant has removed a substantial portion of personal property or voluntarily and permanently terminated the utilities and has left personal property in the premises or on the premises, the Landlord may enter the premises, using forcible entry if required, and dispose of the property. All property of the tenant not covered by this section will be disposed under applicable state law. If Tenant abandons the premises, Tenant shall be liable for the payments for the remaining term of this Agreement under applicable state law. Landlord shall also have the right to store or dispose of any of Tenant's property remaining in the premises after the termination of this Agreement as provided by applicable law.

22. **SECURITY DEPOSIT:** The Landlord does not require a security deposit, therefore does not hold any funds on behalf of the Tenant.

23. **NONCOMPLIANCE WITH AGREEMENT OR FAILURE TO PAY:** If there is a noncompliance by the Tenant with this Agreement other than nonpayment or a noncompliance with Paragraph 12 above, the Landlord may deliver a written notice to the Tenant specifying the acts and omissions constituting the breach and that this Agreement will terminate in accordance with applicable state laws.

This Agreement shall terminate as provided in the notice except that: If the breach is remediable by repairs or otherwise and the Tenant adequately remedies the breach before the date specified in the notice, or if such remedy cannot be completed within 30 days, but is commenced within the 30-day period and is pursued in good faith to completion within a reasonable time, this Agreement shall not terminate by reason of the breach.

If payment is unpaid when due, the Landlord may terminate this Agreement and initiate forcible entry and detainer proceedings as allowable by state law.

The Landlord may recover actual damages and obtain injunctive relief in magistrate's or circuit court, as allowable by state law, without posting bond for any noncompliance by the Tenant with this Agreement or Paragraph 12 above.

If there is noncompliance by the Tenant with Paragraph 12 above materially affecting health and safety that can be remedied by repair, replacement of a damaged item, or cleaning and the Tenant fails to comply as promptly as conditions require in case of emergency, or within thirty (30) days after written notice by the Landlord specifying the breach and requesting that the Tenant remedy it within that period of time, the Landlord may enter the dwelling unit and cause the work to be done in a workmanlike manner and shall, in addition, have the remedies available under applicable state law.

If there is noncompliance by the Tenant with Paragraph 12 above materially affecting health and safety other than as set forth in the preceding paragraph, and the Tenant fails to comply as promptly as conditions require in case of emergency, or within thirty (30) days after written notice by the Landlord if it is not an emergency, specifying the breach and requesting that the Tenant remedy within that period of time, the Agreement shall terminate. Upon termination, the Landlord has a right to possession and for payment and a separate

**Lease Agreement w/Option to Purchase**



claim for actual damages for breach of the Agreement and reasonable attorney's fees as allowable by state law. At Landlord's option, a money judgment may be obtained against Tenant for any claim not satisfied, and Landlord may proceed to collect the judgment in accordance with applicable state law.

24. **REMEDY AFTER TERMINATION:** If the Agreement is terminated, the Landlord has a right to possession, for payment, and a separate claim for actual damages for breach of the Agreement, reasonable attorney's fees, collection costs as allowable by state law, court costs and interest at the then applicable statutory rate under state law.

25. **NOTICE:** A Landlord receives notice when it is delivered at the place of business of the Landlord through which the Agreement was made or at any place held out by Landlord as the place of receipt of the communication.

26. **PROHIBITIVE EQUIPMENT/FURNITURE:** Tenant agrees not to place antennas, waterbeds, and auxiliary heaters on or in the premises without written permission from Landlord.

27. **USE OF PREMISES:** The premises shall be used for residential purposes by Tenant and for no other purpose whatsoever. It shall not be used in violation of any provision of this Agreement or of any rule or regulation or addendum adopted by Landlord and incorporated in this Agreement or of any ordinance, rule or regulation of any government body or in any manner which will constitute a nuisance or which will vitiate or increase the insurance rate of the premises.

28. **PETS:** The premises shall be used for residential purposes by Tenant and for no other purpose whatsoever. It shall not be used in violation of any provision of this Agreement or of any rule or regulation or addendum adopted by Landlord and incorporated in this Agreement or of any ordinance, rule or regulation of any government body or in any manner which will constitute a nuisance or which will vitiate or increase the insurance rate of the premises.

29. **WAIVER:** A Tenant is considered to have waived a violation of a Landlord's duty to maintain the premises as set forth in this Agreement a violation of the Landlord's duties under applicable state law, as defense in an action for possession based upon nonpayment, or in an action for payment concerning a period where Landlord has no notice of the violation of the duties, thirty (30) days before payment is due for violations involving services other than essential services, or the Landlord has no notice before payment is due which provides a reasonable opportunity to make emergency repairs necessary for the provision of essential services. No modification, change, or cancellation hereof shall be valid unless in writing and executed by all parties hereto. No representation or promise has been made by either party hereto except as herein stated.

30. **PEACEFUL ENJOYMENT:** The Landlord covenants that the Tenant, on making payment and performing the covenants hereof, shall and may peaceably and quietly have, hold, and enjoy the premises for the term mentioned without unlawful hindrance or interruption by the Landlord.

31. **BINDING PROVISIONS:** The provisions of this Agreement shall be binding upon and inure to the benefit of the Landlord and the Tenant, and their respective successors, legal representatives, and assigns.

32. **SUBORDINATION:** Tenant's rights are subject to any bona fide mortgage which now covers said premises and which may hereafter be placed on said premises by Landlord. Tenant shall upon request by Landlord execute a subordination of its rights under this Agreement to any mortgage or transfer of deed given by Landlord hereunder, whether to secure construction or permanent or other financing or asset disposition. Tenant shall, upon request by Landlord, promptly execute a certification of good standing certifying the terms of this Agreement, its due execution, the provisions hereof, or the terms of amendments hereto, if any, and any other information reasonably requested

33. **PAYMENT ADJUSTMENT:** Upon expiration of each term of this Agreement, the Landlord, at Landlord's discretion, may alter the monthly payment schedule in effect provided only that written notice of such alteration is delivered as first class mail via the US Postal Service, postage prepaid at least fifteen (15) days prior to the effective date of alteration. Annual adjustments may be made by Landlord to accommodate annual changes in property operating expenses, to include but not limited to property taxes, property insurance and HOA fees when applicable.

☑ | TENANT 1 INITIALS |JD| TENANT 2 INITIALS |___| LANDLORD INITIALS

Lease Agreement w/Option to Purchase 

claim for actual damages for breach of the Agreement and reasonable attorney's fees as allowable by state law. At Landlord's option, a money judgment may be obtained against Tenant for any claim not satisfied, and Landlord may proceed to collect the judgment in accordance with applicable state law.

24. **REMEDY AFTER TERMINATION:** If the Agreement is terminated, the Landlord has a right to possession, for payment, and a separate claim for actual damages for breach of the Agreement, reasonable attorney's fees, collection costs as allowable by state law, court costs and interest at the then applicable statutory rate under state law.

25. **NOTICE:** A Landlord receives notice when it is delivered at the place of business of the Landlord through which the Agreement was made or at any place held out by Landlord as the place of receipt of the communication.

26. **PROHIBITIVE EQUIPMENT/FURNITURE:** Tenant agrees not to place antennas, waterbeds, and auxiliary heaters on or in the premises without written permission from Landlord.

27. **USE OF PREMISES:** The premises shall be used for residential purposes by Tenant and for no other purpose whatsoever. It shall not be used in violation of any provision of this Agreement or of any rule or regulation or addendum adopted by Landlord and incorporated in this Agreement or of any ordinance, rule or regulation of any government body or in any manner which will constitute a nuisance or which will vitiate or increase the insurance rate of the premises.

28. **PETS:** The premises shall be used for residential purposes by Tenant and for no other purpose whatsoever. It shall not be used in violation of any provision of this Agreement or of any rule or regulation or addendum adopted by Landlord and incorporated in this Agreement or of any ordinance, rule or regulation of any government body or in any manner which will constitute a nuisance or which will vitiate or increase the insurance rate of the premises.

29. **WAIVER:** A Tenant is considered to have waived a violation of a Landlord's duty to maintain the premises as set forth in this Agreement a violation of the Landlord's duties under applicable state law, as defense in an action for possession based upon nonpayment, or in an action for payment concerning a period where Landlord has no notice of the violation of the duties, thirty (30) days before payment is due for violations involving services other than essential services, or the Landlord has no notice before payment is due which provides a reasonable opportunity to make emergency repairs necessary for the provision of essential services. No modification, change, or cancellation hereof shall be valid unless in writing and executed by all parties hereto. No representation or promise has been made by either party hereto except as herein stated.

30. **PEACEFUL ENJOYMENT:** The Landlord covenants that the Tenant, on making payment and performing the covenants hereof, shall and may peaceably and quietly have, hold, and enjoy the premises for the term mentioned without unlawful hindrance or interruption by the Landlord.

31. **BINDING PROVISIONS:** The provisions of this Agreement shall be binding upon and inure to the benefit of the Landlord and the Tenant, and their respective successors, legal representatives, and assigns.

32. **SUBORDINATION:** Tenant's rights are subject to any bona fide mortgage which now covers said premises and which may hereafter be placed on said premises by Landlord. Tenant shall upon request by Landlord execute a subordination of its rights under this Agreement to any mortgage or transfer of deed given by Landlord hereunder, whether to secure construction or permanent or other financing or asset disposition. Tenant shall, upon request by Landlord, promptly execute a certification of good standing certifying the terms of this Agreement, its due execution, the provisions hereof, or the terms of amendments hereto, if any, and any other information reasonably requested.

33. **PAYMENT ADJUSTMENT:** Upon expiration of each term of this Agreement, the Landlord, at Landlord's discretion, may alter the monthly payment schedule in effect provided only that written notice of such alteration is delivered as first class mail via the US Postal Service, postage prepaid at least fifteen (15) days prior to the effective date of alteration. Annual adjustments may be made by Landlord to accommodate annual changes in property operating expenses, to include but not limited to property taxes, property insurance and HOA fees when applicable.

**Lease Agreement w/Option to Purchase**



34. **LOSS OF PERSONAL PROPERTY:** Any personal property placed in the premises or placed in any storage room, space or area in a building or yard in which the premises are located, or elsewhere on the property of Landlord, including any automobile or vehicle parked in any drive or parking area, shall be at the risk of Tenant. Landlord shall not be liable for any loss of or injury or damage to any automobile or other property belonging to Tenant or other persons, or to any person, resulting from collision, theft, or any other cause whatsoever sustained by reason of or growing out of the storage of personal property or the parking of any automobile or vehicle belonging to Tenant or any other use by Tenant's family members, Tenant's servant or agent, or Tenant's guests of storage or parking areas. Tenant agrees to indemnify and hold harmless Landlord from and against any and all claims, which may be made by Tenant, a member of Tenant's family, or servant, agent or guest of Tenant for such loss or damage. Tenant acknowledges that Landlord does not carry insurance to cover Tenant's personal property. Tenant shall be responsible for and is advised to obtain appropriate personal content insurance.

35. **JOINT RESPONSIBILITY:** If this Agreement is executed by more than one (1) Tenant, the responsibility and liabilities herein imposed shall be considered and construed to be joint and several, and the use of the singular shall include the plural.

36. **LANDLORD'S AND TENANT'S ADDRESS FOR COMMUNICATIONS:** All notices, requests, and demands unless otherwise stated herein, shall be addressed and sent to:

| Landlord: | ALAN INVESTMENTS III, LLC |
| Address: | 16 Berryhill Road, Suite 200 |
| City, State, Zip: | Columbia, SC 29201 |
| Email: | accountservices@vpm3.com |
| Phone: | (803) 799-0070 |

| Tenant #1 | CHALMERS ALIXANDER SIMPSON JR. | Tenant #2 | JESSICA LYNN DITTER |
| Address: | 501 MACLAY STREET APT 9 | Address: | 3010 TURKEY FARM ROAD |
| City, State, Zip: | HARRISBURG, PA 17110 | City, State, Zip: | IRWIN, PA 15642 |
| Email: | abc@gmail.com | Email: | jessiejay521@gmail.com |
| Phone: | (717) 571-3841 | Phone: | (717) 839-9819 |

37. **CAPTIONS:** Any heading preceding the text of any paragraph hereof is inserted solely for convenience of reference and shall not constitute a part of this Agreement, nor shall they affect its meaning, construction or affect.

38. **FACSIMILE AND OTHER ELECTRONIC MEANS:** The parties agree that this Agreement may be communicated by use of a fax or other secure electronic means, including but not limited to electronic mail and the internet, and the signatures, initials and handwritten or typewritten modifications to any of the foregoing shall be deemed to be valid and binding upon the parties as if the original signatures, initials and handwritten or typewritten modifications were present on the documents in the handwriting of each party.

39. **MEGAN'S LAW:** The Tenant agrees that no course of action may be brought against the Landlord for failure to obtain or disclose any information contained in the state Sex Offender Registry. The Tenant agrees that the Tenant has the sole responsibility to obtain any such information. The Tenant understands that Sex Offender Registry information may be obtained from the local sheriff's department or other appropriate law enforcement officials.

40. **ENTIRE AGREEMENT:** This Agreement and its Exhibits contains the entire agreement between the parties hereto and all previous negotiations leading thereto, and it may be modified only by a dated written agreement signed by both Landlord and Tenant. No surrender of the premises or of the remainder of the term of this Agreement shall be valid unless accepted by Landlord in writing.



**Vision Property Management**
PO Box 488
Columbia, SC 29202



COLUMBIA
SC 290
11 JAN '1'
PM 2 L

Priority Mail
ComBaaPrice

UNITED STATES POSTAGE
PITNEY BOWES
02 1P          $ 000.46⁵
0003211117      JAN 11 2017
MAILED FROM ZIP CODE 29210

Resident
636 Curtin Street
Harrisburg, PA 17110

17110-242436

www.VPM3.com



**VISION**
PROPERTY MANAGEMENT

P.O. Box 488 | Columbia | SC | 29202

<u>**PLEASE DO NOT IGNORE THIS LETTER**</u>
February 15, 2017

Chalmers Simpson Jr, Jessica Ditter
636 Curtin Street
Harrisburg, PA 17110

<u>Property Code:</u>   K3PA33

Dear Chalmers and Jessica:

This letter is to inform you of an outstanding balance due, that you may or may not be aware of, in the amount of $549.78 for an unpaid garbage bill and $194.48 for an unpaid water bill associated with the property located at 636 Curtin Street.

Pursuant to page 2 of the Lease Agreement signed by you on 09/15/2016, you are responsible for payment of this outstanding debt.  Failure to submit payment in full or make mutually agreeable payment arrangements for this debt may result in legal proceedings commencing against you for breach of contract.

Please contact us within fifteen (15) days of the date of this letter to avoid potential negative action.

We accept Visa, MasterCard and Discover payments by phone at (803) 354-5694. A processing fee applies for each payment. If you have questions, please contact me at the number listed above.

Thank you in advance for your cooperation and attention to this matter.


Very truly yours,


Kelly Lloyd
Senior Collection Agent
klloyd@vpm3.com


**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL
BE USED FOR THAT PURPOSE.**
*In the event you have or will receive a discharge in bankruptcy, this notice is NOT intended to be an attempt to collect, recover or offset the indebtedness as your personal liability. If you are represented by an attorney, please refer this letter to such attorney and provide us with such attorney's name, address, and telephone number. To the extent your obligations have been discharged, or are subject to an automatic stay of bankruptcy order under Title 11 of the United States Code, this notice if for compliance and information purposes only.*



**CAPITAL REGION WATER**
100 PINE DRIVE
HARRISBURG, PA 17103
Phone: 1-888-510-0606

| ACCOUNT NUMBER | 10017013-0 |
|---|---|
| CID: | 130557 |
| BILLING DATE | 01/25/2017 |
| AMOUNT DUE | 194.48 |
| DUE DATE | 2/15/17 |
| AFTER DUE DATE PAY | 194.48 |

K3PA33          JAN 3 1 2017

**PLEASE RETURN BOTTOM PORTION WITH YOUR PAYMENT**

ALAN INVESTMENTS III LLC
16 BERRYHILL RD
SUITE 200
COLUMBIA SC 29210

www.capitalregionwater.com          1-888-510-0606
**CUSTOMER ACCOUNT INFORMATION RETAIN FOR YOUR RECORDS**

| CUSTOMER NAME | SERVICE ADDRESS | ACCOUNT NUMBER |
|---|---|---|
| ALAN INVESTMENTS III LLC | 636 CURTIN ST | 10017013-0 |

| METER NUMBER | SERVICE PERIOD FROM | TO | METER READINGS PRIOR | PRESENT | CONSUMPTION | GALLONS USED WATER | SEWER | TYPE OF READINGS |
|---|---|---|---|---|---|---|---|---|
| 80904223 | 12/6 | 12/29 | 0 | 0 | 0 | 0 | 0 | Actual |

| | |
|---|---|
| Previous Balance | 228.17 |
| Penalty | 0.09 |
| Payments | -40.00 |
| Adjustments | 0.00 |
| Prior Balance | 188.26 |

Prepare for cold weather: Frozen water pipes in your home can lead to costly repairs. Visit capitalregionwater.com/winterprep to learn how to protect your pipes from freezing.

Automatic monthly withdrawal payments (ACH), Customer Portal online payments and Ebill are available online at www.capitalregionwater.com. Credit Card Payments can be made by calling 1-888-510-0606 to speak with one of our Customer Service Representatives. Only cardholder (Actual Name on Card) is authorized to make a credit card payment.

| | |
|---|---|
| Ready-to-serve water | 6.22 |
| Water Utilization | 0.00 |
| Sewer Utilization | 0.00 |
| Sewer Maintenance | 0.00 |
| Current Charges | 6.22 |
| Pay This Amount | 194.48 |

**PLEASE DETACH & RETURN WITH PAYMENT**

| AMOUNT NOW DUE | 194.48 |
|---|---|
| DUE DATE | 2/15/17 |
| AFTER DUE DATE PAY | 194.48 |

| ACCOUNT NUMBER | 10017013-0 |
|---|---|
| CID: | 130557 |
| CUSTOMER NAME | ALAN INVESTMENTS III LLC |
| SERVICE ADDRESS | 636 CURTIN ST |
| BILLING DATE | 01/25/2017 |

Please make checks payable to: Capital Region Water

☐ Cash          ☐ Check          ☐ Money Order

| AMOUNT PAID | S |
|---|---|

00000100170130000194487

ALAN INVESTMENTS III LLC
16 BERRYHILL RD
SUITE 200
COLUMBIA SC 29210

**Capital Region Water**
**PO Box 826429**
**Philadelphia, PA 19182-6429**

# THE CITY OF HARRISBURG
# MONTHLY UTILITY BILLING

VBPA 33

FEB 0 3 2017

PAST DUE CHARGES ARE DUE IMMEDIATELY.

| ACCOUNT NUMBER | BILL DATE | DUE DATE | AMOUNT DUE |
|---|---|---|---|
| 10017013-0000(3) | 01/26/2017 | 02/15/2017 | 549.78 |

PROPERTY ADDRESS
636 CURTIN ST

PROPERTY OWNER
ALAN INVESTMENTS III LLC

100170130000    0000065721 012486

ᵈᵘ ᵗⁱ U T37

ALAN INVESTMENTS III LLC
16 BERRYHILL RD STE 200
COLUMBIA SC  29210-6433

AMOUNT PAID: $_____

*16100170130000000054978*



Return this copy with payment payable to: City Treasurer  see new payment address

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## THE  CITY  OF  HARRISBURG
### MONTHLY UTILITY BILLING

| ACCOUNT NUMBER | BILL DATE | DUE DATE | AMOUNT DUE |
|---|---|---|---|
| 10017013-0000(3) | 01/26/2017 | 02/15/2017 | 549.78 |

PROPERTY ADDRESS
636 CURTIN ST

PROPERTY OWNER
ALAN INVESTMENTS III LLC

PREVIOUS AMOUNT BILLED ON 12/26/2016 ................................. 517.44
  REFUSE PICK-UP            13.00
  REFUSE DISPOSAL           19.34
TOTAL NEW CURRENT CHARGES ............................................ 32.34
TOTAL AMOUNT DUE ..................................................... 549.78
RES

** PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION **
YOUR COPY

Please direct your billing and sanitation related questions to:
City of Harrisburg Help Desk at info@harrisburgpa.gov or
call 311 within the city or (717) 255-3040.

City of Harrisburg Sanitation Department
1820 Paxton St, Harrisburg PA 17104-2826
**DO NOT SEND PAYMENTS TO THIS ADDRESS.** See below.

Payment may be mailed, made via ACH from your checking acct,
with your credit card through www.harrisburgpayments.com (fee)
or by phone (888) 243-3456 (fee),
or in person from 8:30 am to 4:30 pm Monday thru Friday.
  City Treasurer
  10 N 2nd St Ste 103
  Harrisburg PA 17101-1679

---

10017013-0000        65721 A      13,949
ALAN INVESTMENTS III LLC

**SECTION 2 - CHANGE OF ADDRESS**
If information has changed please complete below:

Name _____

Address _____

City/State _____

9 Digit ZIP _____

(Area Code) Telephone _____

---

**Auto-pay is available from your checking account.  To download the ACH (CHAPP) application
go to cityofharrisburg.zendesk.com, select Documents, then look under City Treasurer.
Applications are also available at the Office of the City Treasurer.**

---

**IMPORTANT - BE SURE TO RETURN THE UPPER SECTION**
Send to: City Treasurer, 10 N 2nd St Ste 103, Harrisburg PA 17101-1679
Make check or money order payable to: City Treasurer

**PAYMENT INSTRUCTIONS:**

*   if you wish to pay by mail, enclose the upper section with your check or
    money order, payable to City Treasurer and mail to City Treasurer,
    10 N 2nd St Ste 103, Harrisburg PA 17101-1679

**IMPORTANT:** Please record your property number on check or money order.

2   Your cancelled check can be used as your receipt; however, if you desire
    a return receipt, enclose all copies and a self-addressed stamped envelope.

**INSTRUCCIONES DE PAGO:**

1   Si usted desea pagar por correo, incluya la copia de la ciudad con un cheque o
    giro postal a: City Treasurer.
    10 N 2nd St Ste 103, Harrisburg, PA 17101-1879

**IMPORTANTE:** Escriba el número de la propiedad en el cheque o giro postal.

2   Su cheque cancelado puede ser usado como su recibo de pago.  Sin embargo,
    si desea que se le devuelva un recibo, incluya las dos primeras copias y un
    sobre estampado con su nombre y dirección.

 **VISION**
PROPERTY MANAGEMENT

Property Application
Credit Release Authorization Form

16 Berryhill Rd.          Email,        applications@VPMa.com      Phone:   888-466-7932
Columbia, SC 29210                                                Fax:     803-403-8303

Our signatures below authorize Vision Property Management, LLC, to obtain a standard data credit report through MCB.

We further authorized Vision Property Management, LLC, to contact any and all listed landlords and employers for rental and employment verification.

We understand that use of a photo copy of this form may be necessary to verify one of more of my credit references. We authorize the use and hereby request that such copy be fully honored.

We understand that all properties are sold on a first come, first served basis.

**By signing below and applying with Vision Property Management, I/we acknowledge my/our intention to take possession of the property and that I/we have personally taken a tour of the inside of the property and understand that I/we are responsible for all repairs and renovations.**

I authorize the verification of the information provided on this form as to my credit and employment. I have received a copy of this application.

_____  9-1-2016       _____
Applicant Signature            Date            Co-Applicant Signature       Date

Page 6 of 7



RECEIVED 08/29/2016 05:48PM 7172335000 FAMILY FINANCIL CENT

# VISION
PROPERTY MANAGEMENT

Property Application
Applicant Identification Form

16 Berryhill Rd.
Columbia, SC 29210
Email: applications@VPMSC.com
Phone: 888-466-7932
Fax: 803-403-8303

Once this application has been completely filled out please fax or scan and email the complete application, along with copies of all supporting documentation including copies of applicant and co-applicant IDs and Social Security Cards and all proof of income.

**SEE ATTACHED:**

*** If you're unable to copy your ID's on this page, please make a copy of them and include it with your submission ***

| | |
|---|---|
| Place Applicant's Driver's License here | Place Applicant's Social Security Card here |
| Place Co-Applicant's Driver's License here | Place Co-Applicant's Social Security Card here |

# VISION
## PROPERTY MANAGEMENT

**Property Application**
**Applicant Info: 2 of 2**

| 14 Berryhill Rd. | Email, | applications@VPM3.com | Phone: | 888-454-7932 |
| Columbia, SC 29210 | | | Fax: | 803-405-8303 |

RECEIVED 08/29/2016 05:49PM 7172335000

FAMILY FINANCIAL CENT

### CO-APPLICANT

| First Name | Middle Name | Last Name |
| SEE ATTACHED FOR CO-APPLICANT (1) AND (2) | | |

Date of Birth — Social Security Number — Email Address

Primary Phone — Alternate Phone — Best time to contact? — Number of Children (Under 18)

Marital Status: Single   Married   Divorced   Widowed

Primary Purpose for Property: Primary Residence   Rental Property

**Current Address**
Street Address — City — State — Zip

**Mailing Address**
Street Address — City — State — Zip

Landlord Name — Landlord Phone — Move-in Date — Monthly Rent Amount

Current Employer — Position/Title — Monthly Income

Street Address — City — State — Zip

Supervisor Name — Supervisor Phone — Hire Date — Full Time / Part Time

Name — Phone — Relationship

Name — Phone — Relationship

Page 5 of 7



# VISION
## PROPERTY MANAGEMENT

**Property Application**
**Applicant Info: 1 of 2**

16 Berryhill Rd.          Email:          applications@VPM3.com          Phone:   888-466-7932

Columbia, SC 29210                                                         Fax:     803-403-5303

### Primary Applicant

| First Name | Middle Name | Last Name |
|---|---|---|
| CHALMERS | ALIXANDER | SIMPSON, JR |

Date of Birth: 12-9-1959

Social Security Number: 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

Email Address: abc@gmail.com

Primary Phone: 717-343-9047     Alternate Phone: 717-571-3841     Best time to contact? ANY TIME.     Number of Children (Under 18): NONE

Marital Status: Single **X**   Married   Divorced   Widowed

Primary Purpose for Property: open reco hom — Primary Residence   Rental Property

**Current Address**
Street Address: 501 Maclay Street #9     City: HARRISBURG     State: PA.     Zip: 17110

**Mailing Address**
Street Address: P.O. BOX 5533   HARRISBURG,   PA. 17110     City     State     Zip

Landlord Name: ANDRE MATHIAS     Landlord Phone: 717-678-2377     Move-In Date: JULY 15th, 2013     Monthly Rent Amount: 400.00

### Employment

Current Employer: SOCIAL SECURITY INCOME     Position/Title: DISABILITY     Monthly Income: $733.00

555 WALNUT STREET          City: HARRISBURG     PA.     17110     Zip

Supervisor Name: SSI OFFICER     Supervisor Phone: 1-800-325-0778     Hire Date: APRIL 1st, 2015     **X** Full Time   Part Time

### Emergency Contact

Name: CHAMP SIMPSON     Phone: 717-317-4587     Relationship: BROTHER

Name     Phone     Relationship

Page 4 of 7



**Property Application**
**Application Checklist**

| | | | |
|---|---|---|---|
| 16 Berryhill Rd. | Email: | applications@VPM3.com | Phone: 888-456-7932 |
| Columbia, SC 29210 | | | Fax: 803-403-8303 |

# This checklist must be completed before submitting your application.

## All of the Following Documentation must be submitted before your application is processed.
## Each applicant must initial and Sign upon completion.

| Applicant (Initial Below) | Co-Applicant (Initial Below) | |
|---|---|---|
| | | Application filled out completely |
| | | Credit and Information Release Authorization form signed |
| | | Driver's License or State Identification Card |
| | | Social Security Card |
| | | Proof of ALL Income |

## Listed below are the document requirements for different sources of income. Please include all the appropriate documents for income you claim to help speed up the application process.

- **Pay Stub/DFAS** — Periodic pay with deduction, 2 stubs with period ending within 60 days of contract date
- **Pay Statement** — Periodic pay without deductions, 2 statements with period ending within 60 days of contract date
- **Bank Statements** — 3 month deposit history
- **SSI/SSA/VA**
- **Pension/Retirement** — Base amount has gross, must be dated within 12 months of contract date
- **Remmittirance** — 3 months for each client
- **Adoption & Foster Care Subsidy** — 3 months of statements and proof of age for children
- **Tax Returns/W-2/1099**

Page 3 of 7

RECEIVED 08/29/2016 05:48PM 7172335808    FAMILY FINANCIL CENT